UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA WAHL, )<br>on behalf of herself and certain classes, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MIDLAND CREDIT MANAGEMENT, )<br>INC., MIDLAND FUNDING NCC-2 CORP., )<br>And ENCORE CAPITAL GROUP, INC., )<br>formerly known as MCM Capital Group, )<br>Inc., )<br>)<br>Defendants. ) | No. 06 C 1708<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Wahl ("Wahl") filed a putative class action suit against Midland Credit Management, Incorporated ("MCM"), Midland Funding NCC-2 Corporation ("NCC-2"), and Encore Capital Group, Incorporated ("Encore") (collectively, "Defendants") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (R. 36, Pl.'s Mem. in Support of Mot. for Class Cert. ("Pl.'s Mem") at 1.) Currently before the Court is Wahl's motion for class certification. (R. 34-1, Pl.'s Mot. for Class Cert.)

## BACKGROUND

Wahl brings this action against three affiliated companies. Defendant Encore is the parent corporation of Defendant NCC-2, and MCM is an affiliate of Encore. (R. 59, Defs.' Mem. in Opp. to Mot. for Class Cert. ("Defs.' Mem.") at 1.) Defendants purchase defaulted consumer debts (also known as "charged off debt") from different corporations for a few cents on the dollar and attempt to collect the debt from the consumer. (R. 34, Pl.'s Mot. for Class Cert. at

2.) NCC-2 takes title to the charged off debts, most of which are credit card debts. (*Id.*) MCM is a collection agency and collects the bad debts purchased by NCC-2. (*Id.*)

Prior to February 2005, Wahl maintained a credit card account with British Petroleum ("BP"). (*Id.* at 3.) On February 3, 2005, MCM sent Wahl a letter informing her that NCC-2 had purchased her debt from BP and that MCM would be attempting to collect the debt. (*Id.*, Ex. D, Feb. 3rd Letter.) The February 3rd letter indicated that the current balance of Wahl's BP debt was $1,149, but MCM offered her a 25% discount off of the balance if she mailed the payment by March 13, 2005. (*Id.*) The letter also stated that Wahl had 30 days after receiving the letter to dispute the validity of the debt, and in that event, MCM would obtain verification of the debt or a copy of the judgement, if one existed. (*Id.*) Wahl failed to notify MCM that she disputed the debt by the March 13th. (*Id.*) On April 15, 2005, MCM sent Wahl a follow-up letter stating that it was attempting again to collect the BP debt, which had a principal balance of $1,149.09 and accrued interest of $11.48, making the new balance $1,160.57. (R. 34, Pl.'s Mot. for Class Cert., Ex. A, April 15th Letter.) On April 22, 2005, Wahl, through her counsel Jerome Lamet ("Lamet"), disputed the debt. (R. 59, Defs.' Mem., Ex. E, Wahl Letter.) In her letter, Wahl claimed that she was legally insolvent, and that if MCM persisted in contacting her, then she would pursue legal action against them. (*Id.*)

On August 27, 2005, MCM sent Wahl another letter indicating that the debt was still outstanding, the accrued interest up to that date was $32.40, and the current balance of the debt was now $1,181.49. (R. 1, Compl., Ex. B, Aug. 27th Letter.) In late 2005, MCM and NCC-2 transferred the debt to a third, nonaffiliated debt collector, Zwicker and Associates ("Zwicker"). (R. 59, Def.'s Mem. at 5.) On November 15, 2005, Lamet notified Zwicker in writing that Wahl

2

disputed the debt, acknowledged MCM's right to pursue legal action against Wahl, but offered to provide sworn affidavits and bank statements proving Wahl's insolvency if this would avoid suit. (*Id.*, Ex. C, Nov. 15th Letter.) Lamet also stated that Zwicker should cease contacting Wahl about the debt. (*Id.*)

Zwicker, however, sent Wahl a letter on December 14, 2005, indicating that the balance of her account was $1,154.91, due immediately, or in the alternative, she could contact their offices to make arrangements to pay her debt. (R. 1, Compl., Ex. C, Dec. 14th Letter.) In response, Wahl, now represented by Edelman, Combs, Latturner & Goodwin ("Edelman Combs"), sent Zwicker a letter on February 5, 2006, indicating that the debt was disputed, requesting information that would support Zwicker's claim against Wahl, and demanding that Zwicker provided documentation of how they arrived at the amount owed. (*Id.*, Ex. D, Feb. 5th Letter.) On March 3, 2006, MCM sent Wahl a letter requesting any documentation that supported her dispute. (*Id.*, Ex. E, Mar. 6 Letter.) Wahl did not respond and instead filed suit against Encore, MCM, and NCC-2 on March 28, 2006. (*Id.*, Compl. at 1, 7.)

Wahl claims that in the April 15th and August 27th letters, MCM presented the "principal balance" as the total amount of Wahl's purchases and cash advances as well as interest accrued while the debt was held by BP, and the "interest accrued" as amounts that had been added after Defendants purchased the charged off debt. (R. 34, Pl.'s Mot. for Class Cert. ¶¶ 4, 6.) She alleges that Defendants' representation did not disclose the interest and finance charges that had accrued prior to the charge off, and simply lists them as a part of the "principal balance." (*Id.*, ¶ 6.) Wahl alleges that by including the interest that accrued while BP held the debt as a part of the principal balance, MCM engaged in a false and misleading practice in violation of Section

1692c[1] of the FDCPA. (R. 36, Pl.'s Mem. at 1.) Wahl further alleges that Defendants violated Sections 1692c[2] and 1692g[3] of the FDCPA by assigning her debt to a third party debt collector after she disputed the debt, who subsequently continued debt collection activities. (*Id.* at 2.)

---

[1] Section 1692e reads, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> ... (2) The false representation of---
>     (A) the character, amount, or legal status of any debt; or ...
> ... (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C § 1692e.

[2] Section 1692c provides in pertinent part that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 USCS § 1692c(a)(2) (2007). The statute further states that:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except---
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C § 1692c(c).

[3] Section 1692g provides that: "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof . . ." 15 U.S.C. § 1692g.

Wahl asks this Court to certify two proposed classes against Defendants. Class A is defined as:

> (a) all individuals in Illinois, (b) to whom defendant MCM sent a letter, (c) seeking to collect a credit card debt, (d) describing as 'principal' an amount other than the outstanding purchases and cash advances on the card or describing as 'interest' an amount less than the outstanding finance charges on the account, or both, (e) which letter was sent on or after March 28, 2005 (one year prior to filing this action) and on or before April 17, 2006 (20 days after filing this action).

(R. 34, Pl.'s Mot. for Class Cert. at 1.) Class B is defined as:

> (a) all individuals in Illinois, (b) who (according to the records of defendants and their collection agencies) disputed a debt defendants sought to collect, (c) following which collection communications continued by or on behalf of defendants, (d) where any of the subsequent communications occurred on or after March 28, 2005 and on or before April 17, 2006.

(Id. at 1-2.) For the following reasons, Wahl's motion for class certification is granted in part and denied in part.

## LEGAL STANDARDS

A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 286 (N.D. Ill. 2005). A class may be certified if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Failure to meet any of the requirements of Rule 23(a) precludes class certification. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). Once these prerequisites are met, the potential class must also satisfy at least one provision of Rule 23(b). *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th

Cir. 1992). A plaintiff seeking monetary damages, as Plaintiffs are here, must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). A court has broad discretion to determine whether the proposed class has met the requirements of Rule 23. *Jackson*, 227 F.R.D. at 286.

## ANALYSIS

Wahl argues that the proposed classes meets the requirements of Rule 23(a) and Rule 23(b)(3). Defendants contend, however, that Wahl has failed to satisfy her burden because she is an inadequate representative, her claims are atypical, and the proposed classes cannot satisfy the predominance requirement of Rule 23(b)(3). We will consider these arguments as we analyze the proposed classes under both Rule 23(a) and Rule 23(b)(3).

**I.    Rule 23(a)**

### A.    Rule 23(a)(1): Numerosity

In order prove numerosity, Wahl must establish that the class is so large that "joinder of all members is impractical." Fed. R. Civ. P. Rule 23(a)(1); *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). In determining if joinder is impractical, a court considers the potential size of the class, the geographic disbursement of the class members, the type of relief sought, and the practicality of relitigating the central issues of the controversy. *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396, (N.D. Ill. 2006). As few as forty members can render joinder impractical, especially when the members are "widely scattered and their holdings are generally too small to warrant undertaking individual actions." *Id.* at 396 (citing *Swanson v. Am.*

*Consumer Indus. Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)). The inability to determine the exact number of class members, however, does not preclude class certification, *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978), and may be granted upon a reasonable estimation of the size of the class. *Marcial*, 880 F.2d at 958; see also *Murray*, 240 F.R.D. at 396 (noting that the court may rely upon common sense in determining whether a plaintiff's estimate of class size is reasonable).

Wahl claims that the numerosity requirement is satisfied because Encore's 2005 Securities and Exchange Commission filings show that it acquired over 5 million accounts in 2005, and the letters she received were "clearly form letter[s] sent via bulk mail." (R. 1, Compl. at 8.) Defendants do not specifically contest numerosity in their brief opposing class certification, (R. 59, Defs.' Mem.), but elsewhere have denied that this requirement is met. (*See* R. 18, Defs.' Answer to Compl. ¶ 57.) Courts in this Circuit have held that alleged FDCPA violations via a form letter sent by a large commercial defendant is sufficient to satisfy numerosity. See *Lucas v. GC Services L.P.*, 226 F.R.D. 337, 340 (N.D. Ind. 2005); *Chapman v. World Wide Asset Mgmt, LLC*, 04 C 7625, 2005 WL 2171168, (N.D. Ill. Aug. 30, 2005); *Seidat v. Allied Interstate Inc.*, 03 C 0975, 2003 WL 21468625 (N.D. Ill. June 19, 2003). The format of the April 15th and August 27th letters indicate that they are standard form letters. MCM has utilized a similar form letter in attempting to collect debts from other consumers who subsequently brought suit against them under the FDCPA. (*See, e.g.*, R. 34, Pl.'s Mot. for Class Cert., Ex. D, Snyder Collection Letter; *see also id.*, Ex. D, Harper Collection Letter; *id.*, Ex. K, Coles Collection Letter.) The only information that varies between letters is the debtor's name and the name of the original creditor, which is capitalized and set off from the rest of the text.

(*See id.*, Ex. A, April 15th Letter; R. 1, Compl., Ex. B, Aug. 27th Letter.) Although it is unclear how many of Encore's customers reside in Illinois, given that Encore's SEC filing indicates that it acquired over 5 million new accounts in 2005 alone, it is likely that enough individuals who reside in Illinois have received these standard form letters from MCM, and also disputed the validity of their debt, that joinder would be impractical. *See Hernandez v. Midland Credit Mgmt.*, 236 F.R.D. 406, 411 (N.D. Ill. 2006) (in a class action against the same Defendants, the court noted, "With respect to Illinois alone, Defendant MCM admits that it sent this notice to more than 56,000 delinquent accounts between December 3, 2003 and March 31, 2004."); *see also Smith v. Short Term Loans, L.L.C.*, 99 C 1288, 2001 WL 127303, at *8 (N.D. Ill. Feb. 14, 2001) (finding that the numerosity requirement was met where defendants used a form letter to communicate with creditors despite the fact that "the precise size of the class cannot be known until after complete discovery the court" but "it is general knowledge or common sense that the proposed class would be large").

Furthermore, given the small amount of damages potentially suffered by each individual class member and the impracticality of relitigating the issues in this case, separate suits involving members of either class would be an inefficient use of judicial resources. Therefore, this Court concludes that Wahl has met the numerosity requirement of Rule 23(a)(1).

### B.    Rule 23(a)(2): Commonality

To satisfy Rule 23(a)(2), the proposed class members' claims must generally arise from a common nucleus of operative fact, and there must be "at least one question of law or fact common to the class." *In re VMS Sec. Litigation*, 136 F.R.D. 466, 473 (N.D. Ill. 1991); *see also Rosario*, 963 F.2d at 1018. Some factual variations between the class members, however, will

8

not defeat commonality. *Peterson v. H.R. Block Tax Svcs., Inc.*, 174 F.R.D. 78, 82 (N.D. Ill. 1997).

This Court has previously held that the requisite common nucleus of operative fact exists in FDCPA cases when the controversy arises from standard form debt collection letters. *Jackson*, 227 F.R.D. at 284; *see also Sledge v. Sands*, 182 F.R.D. 255, 258 (N.D. Ill. 1998). Like *Jackson* and *Sledge*, this case involves a standard form letter, and the Court would have to resolve a question common to all potential members of Class A—whether the manner in which MCM stated that the principal balance due violated the FDCPA. *See Ingram v. Corporate Receivables, Inc.*, 02 C 6608, 2003 WL 21982152, at *3 (N.D. Ill. Aug. 19, 2003) ("[C]laims arising out of standard documents present a 'classic case for treatment as a class action.'") (internal citations omitted).

With respect to Class B, Defendants do not deny that they keep records of those individuals who disputed the validity of their debt, and if Defendants continued their collection efforts despite valid notification of a dispute, the legality of this practice is a common question of law that exists as to each putative class member. *See Halperin v. Nichols, Safina, Lerner & Co.*, 94 C 6960, 1996 WL 634037, at *4 (N.D. Ill. Oct. 29, 1996) ("Where a question of law involves 'standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met.'"); *see also Johnson v. Midland Credit Mgmt.*, 05 CV 1094, 2006 WL 2473004, at *4 (N.D. Ohio Aug. 24, 2006) (in a case alleging a violation of Section 1692g and seeking to certify a similar class, the court noted that the defendants' policy of ignoring returned mail, which might have contained valid notification of a dispute concerning debt, and continuing its collection

efforts would create common questions of law and fact as to each class member). Accordingly, this Court finds that the proposed classes meet the commonality requirement of Rule 23(a)(2).

### C. Rule 23(a)(3): Typicality

In order to satisfy Rule 23(a)(3), the claims and defenses of the class representative must be typical of the claims and defenses of the putative class members. Fed.R.Civ.P. 23(a). "'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Retired Chicago Police Ass'n*, 7 F.3d at 597 (quoting H. Newberg, Class Actions Sec. 1115(b) at 185 (1977)). Defendants advance two theories under which they argue that Wahl's claims are atypical of the rest of the proposed class: (1) Wahl's claim is subject to a unique defense in that her claims are barred by the statute of limitations; and (2) Wahl was not confused by the breakdown of principal and interest used in MCM's letters.

In arguing that Wahl's claim is barred by a unique defense, Defendants rely on the Seventh Circuit's decision in *J. H. Cohn & Co. v. American Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980), where the Court held that "the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." The Seventh Circuit has subsequently stated that "[t]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). Wahl is alleging that Defendants engaged in standardized conduct, common to all class members, in violation of the FDCPA. Therefore, despite the

presence of a potential affirmative defense, Wahl meets the typicality requirement because her claims are based on the same legal theory and arise from the same course of conduct as the claims of the other putative class members.[4] *See Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiffs legal theory to satisfy Rule 23(a)(3)"). Accordingly, we find that the presence of a unique defense against Wahl does not destroy typicality.

Defendants also argue that Wahl is atypical of the class she seeks to represent because in her deposition testimony she stated that she was not confused by the follow-up letters sent by MCM. (R. 59, Defs.' Mem., Ex. A, Wahl Dep. at 100.) The test, however, is not whether the individual who received the letter was misled, but whether an unsophisticated consumer would be misled by the representations made by the debt collector. *Avila v. Ruben*, 84 F.3d 222 (7th Cir. 1996); *Sims v. GC Svcs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (noting that the unsophisticated consumer test is objective). As such, a subjective inquiry into Wahl's confusion or clarity is irrelevant. She argues that the unsophisticated consumer standard has been violated and, as this is the standard necessary for recovery under FDCPA, her claim is typical of the claims of the putative class members of Class A.

Additionally, Wahl's claims are typical of the putative members of Class B. Her claim arises from the same alleged course of conduct as that of the putative class members—Defendants continued collection efforts through third party collectors despite the

---

[4] If the presence of an affirmative defense against Wahl later becomes a distraction away from the larger issues affecting the class as a whole, this issue can be resolved by having a new class representative take Wahl's place. *See, e.g., Nelson v. IPALCO Enters.*, No. IPO-477CHK, 2003 WL 23101792, at *6 n.2 (S.D. Ind. Sept. 30, 2003) ("If the problem of [individual defenses] arises later in a case, it is more likely to affect the issue of adequate representation, which could be solved by merely having a new class representative step forward rather than decertifying an otherwise proper plaintiff class.").

presence of a valid dispute. Further, her claim is premised upon the same legal theory—that this conduct violates the FDCPA. Accordingly, this Court finds that the typicality requirement of Rule 23(a)(3) has been satisfied.

### D. Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that the class representative fairly and adequately represent the interests of the absent class members. Fed. R. Civ. P. 23(a)(4). To determine if the plaintiff has met the adequacy requirement of Rule 23(a)(4), the Court must ask whether the named Plaintiff: (1) has "antagonistic or conflicting claims with other members of the class;" (2) has "a sufficient interest in the outcome of the case to ensure vigorous advocacy;" and (3) has counsel that is "competent, qualified, experienced and able to vigorously conduct the litigation." *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999); *Tatz v. Nanophase Techs. Corp.*, 01 C 8440, 2003 WL 21372471, at *8 (N.D. Ill. June 13, 2003).

Defendants argue that Wahl is an inadequate class representative because she is uninformed about the subject matter of the litigation. However, an adequate class representative must maintain only an "'understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'" *Murray*, 240 F.R.D. at 398. The burden in establishing that the class representative meets this standard is "not difficult." *Murray v. New Cingular Wireless Svc., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

In her deposition testimony, Wahl demonstrated a basic understanding of the claims against Defendants. She stated that her main complaint was that the "principal balance" shown was too high, when she knew that the purchases she made were of an amount less than $200. (R. 59, Defs.' Mem., Ex. A, Wahl Dep. at 6.) Wahl also has participated in discovery and otherwise

assisted her counsel in preparation of this case. (*Id.*) Similarly, Wahl understands that she has a duty as a class representative. She stated that she would not be satisfied if her debt with Defendants was extinguished because she has "promised to be the representative of a class of people who are fighting the same thing." (*Id.* at 83, 85.)

Defendants further argue that Wahl is inadequate because she has "ced[ed] control of the litigation to her counsel." (R. 59, Def.'s Mem. at 12.) A class representative, however, "'need not understand the larger legal theories upon which her case is based.'" *Hernandez*, 236 F.R.D. at 414 (internal citations omitted); *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) ("'Experience teaches that it is counsel . . . not the named parties, who direct and manage these actions . . . '") (internal citations omitted). Defendants also contend that Wahl fails to meet the low burden of adequacy because she has not been involved in settlement conferences. Wahl's appearance at the settlement conference, however, was at the discretion of the Magistrate Judge; therefore, this Court finds her absence from the settlement conference to be an inadequate ground on which to deny certification.

Finally, Defendants state that Wahl is an inadequate representative because she is a "professional 'class representative' who has served as the plaintiff in at least three other putative class actions filed by Edelman, Combs, Latturner, & Goodwin." (R. 59, Defs.' Mem. at 2.) Other than establishing that three other courts have found Wahl to be an adequate class representative, it is wholly unclear how this fact affects Wahl's ability to ensure vigorous advocacy. Furthermore, the Seventh Circuit has stated that "[r]epeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Thus, Defendants'

characterization of Wahl as a professional class representative and their implication that this diminishes her status as an adequate representative in this action is unpersuasive.

In addition to having an adequate named plaintiff, the proposed class must have counsel that is "experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin*, 236 F.R.D. at 393. Defendants do not challenge the ability of Edelman Combs to serve as counsel for this class. Further, this Court notes that several other courts, including this one, have found Edelman Combs adequate in similar suits. *See Murray*, 240 F.R.D. at 397-98; *Cavin*, 236 F.R.D. at 394; *New Cingular Wireless Services*, 232 F.R.D. at 301. For the foregoing reasons, the adequacy requirement of Rule 23(a)(4) is satisfied for both proposed classes.

## II. Rule 23(b)(3)

Under Rule 23(b)(3), a plaintiff must show that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). For the following reasons, we find that Class A meets Rule 23(b)(3)'s predominance and superiority requirement, but Class B fails to meet the predominance requirement because individual issues predominate over common issues, rendering class certification inappropriate.

### A. Predominance

#### 1. Class A

The predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement. *Amchem Prods.*, 521 U.S. at 623-24. "If individual issues predominate, then class certification is usually not a superior method for resolving the controversy, since management of

14

such issues by a court will not be efficient." *Murry v. America's Mortg. Banc, Inc.*, 03 C 5811, 03 C 6186, 2005 WL 1323364, at *3 (N.D. Ill. May 5, 2005).

Defendants argue that individual issues predominate in this action because, before liability could be assessed, a determination would have to be made as to how the principal balance was stated in letters to each class member. Defendants do not deny, however, that they present both the customer's purchases and the interest accrued while the account was held by the original creditor as "the principle balance" in all of its collection letters. In fact, Defendants use a form collection letter and presenting the principle balance in this manner appears to be their common business practice. (*See, e.g.*, R. 34, Pl.'s Mot. for Class Cert., Ex. D, Snyder Collection Letter.) Therefore, it is reasonable to conclude that if the manner in which MCM states the principal balance in its form letter violates the FDCPA, then the violation occurs each time MCM mails a letter similar to the one received by Wahl that calculates the principal balance in this manner. *See Jackson*, 227 F.R.D. at 290 ("As long as the letters that class members received are 'very similar' . . . the legal issue of whether those letters violate the FDCPA is predominate.") Furthermore, the potential need for individual inquiries is avoided if the class definition offered by Wahl is adopted: "(a) all individuals in Illinois, (b) to whom defendant MCM sent a letter, (c) seeking to collect a credit card debt, (d) *describing as 'principal' an amount other than the outstanding purchases and cash advances on the card or describing as 'interest' an amount less than the outstanding finance charges on the account . . ." See Binder v. Atl. Credit & Fin., Inc.*, 06 CV 0071, 2007 U.S. Dist. LEXIS 11483, at *12 (S.D. Ind. Feb. 16, 2007) (noting that individual inquiries are unnecessary because of the limitations of the class definition).

Defendants further argue that Wahl has failed to establish predominance because it would

15

be necessary to determine whether each class member was confused or mislead by the manner in which the principal balance was stated on the collection letter. As stated above, however, the relevant standard for assessing liability is whether an unsophisticated consumer would be misled. *Sims*, 445 F.3d at 963.

Finally, Defendants argue that Wahl's claims are meritless because of the Seventh Circuit's decision in *Taylor v. Cavalry Inv., LLC*, 365 F.3d 572 (7th Cir. 2004). In *Taylor*, the plaintiffs claimed that a debt collection letter violated the FDCPA because it set forth the principal balance, accrued interest, and total amount due in a manner that was both confusing and misleading. *Id* at 574. The Seventh Circuit found that the letters were not confusing, not even to an unsophisticated consumer. *Id.* at 575. Although *Taylor* might be relevant to the underlying merits of the instant case, we note that "a determination of the propriety of class certification should not turn on likelihood of success on the merits." *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). The decision to certify a class is generally made independent of any consideration of the merits of the claim unless the court has to reach the merits of the case in order to resolve class certification. *Eisen v. Carlislie and Jacquelin*, 417 U.S. 156, 177-78 (1974); *Szabo*, 249 F.3d at 677 (stating that a district court may look "beneath the surface of a complaint" in order to determine if class certification is appropriate). Consequently, it would be inappropriate for us to entertain Defendants' argument at this stage. Accordingly, we find that Wahl has satisfied the predominance inquiry of Rule 23(b)(3) for Class A.

  **2. Class B**

With respect to Class B, however, we find that Wahl has not satisfied the predominance requirement of Rule 23(b)(3). In order to determine whether Defendants violated the FDCPA by

continuing collection practices after receiving notification that the debt was disputed, we would have to look at the individual circumstances surrounding each putative class member's claim to determine: (1) whether each class member properly disputed their debt pursuant to Section 1692g; and (2) if so, whether MCM hired a third-party debt collector to continue collection efforts despite having notification of a valid dispute. We cannot assume that because Defendants may have violated Wahl's rights under Section 1692g, then they also must have violated the rights of the other putative class members.

Notably, Class B attacks Defendants' *alleged* policy of continuing collection efforts through a third-party collector despite the existence of a valid dispute. Class B does not take issue with an undisputed and standardized practice or policy, or, like Class A, contest defendant's debt collection practices as illustrated by standardized letters. *See, e.g., Young v. County of Cook*, 06 C 5522007 WL 1238920, at *7 (N.D. Ill. Apr. 25, 2007) ("When a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation."); *Brewer v. Friedman*, 152 F.R.D. 142, 144 (N.D. Ill. 1993) (finding that the legality of defendant's debt collection notices predominated over individual issues regarding minor factual differences). Although the validity of this alleged practice would be a question of law common to each class member, determining the existence of this practice in each individual case, as well as whether each plaintiff legitimately disputed their debt, would predominate over the common question of whether Defendants violated the FDCPA. Accordingly, as Class B has not satisfied the predominance requirement of Rule 23(b)(3), class certification is inappropriate.

### B. Superiority

17

Finally, this Court must determine whether Class A meets Rule 23(b)(3)'s superiority requirement. "A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Jackson*, 227 F.R.D. at 290. Class treatment is especially appropriate for consumer claims. *Amchem Prods.*, 521 U.S. at 625; *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001). In this case, MCM engaged in standardized conduct through form letters that affected many consumers, and an individual consumer's claim would likely be too small to vindicate through an individual suit. *See* 15 U.S.C. § 1693m(a)(2)(A) (stating that an individual plaintiff may seek to recover statutory damages in "an amount not less than $100 nor greater than $1,000"). Therefore, a class action appears to be a superior method to resolve these claims. *Smith*, 2001 WL 127303, at *14 ("Where, as here, the defendant engaged in standardized conduct [sending form letters] that affected many consumers, but where an individual consumer's claim would be too small to justify bringing an individual suit, a class action is particularly suited to the resolution of the consumers' claims."). Accordingly, we find that Wahl has satisfied the superiority prong of Rule 23(b)(3) with respect to Class A.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (R. 34-1) is granted as to Class A, but denied as to Class B. The Court will therefore allow Wahl to represent a class which consists of:

> (a) all individuals in Illinois, (b) to whom defendant MCM sent a letter, (c) seeking to collect a credit card debt, (d) describing as 'principal' an amount other than the outstanding purchases and cash advances on the card or describing as 'interest' an amount less than the outstanding finance charges on the account, or both, (e) which letter was sent on or after March 28, 2005 (one year prior to filing this action) and on or before April 17, 2006 (20 days after filing this action).

A status hearing in this case will be held on July 5, 2007 at 9:45 a.m. to set a firm litigation schedule for this lawsuit. The parties are requested to fully exhaust all remaining settlement possibilities for this lawsuit prior to that date.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated:** May 30, 2007